UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED
FEB 23 2012
AT 8:30 ___M
WILLIAM T. WALSH
CLERK

A.E. on behalf of her minor child N.E., )
)
Plaintiff, )
)
v. ) Civil Action No. 11-2923 (JAP)
)
FREEHOLD REGIONAL HIGH SCHOOL ) **MEMORANDUM OPINION**
DISTRICT BOARD OF EDUCATION, )
ELIZABETH HIGLEY, and )
DR. PATRICIA EMMERMAN )
)
Defendants. )
)

**PISANO, Judge**

This matter comes before the Court upon Defendants Freehold Regional High School District Board of Education, Elizabeth Higley, and Dr. Patricia Emmerman's (collectively "Defendants") Motion for Summary Judgment dismissing the Amended Complaint of Plaintiff A.E. on behalf of her minor child N.E. ("Plaintiff"). (DE 18.) Plaintiff opposes the motion. (DE 21.) The Court has considered the parties' submissions and held oral argument on February 21, 2012. For the reasons set forth below, the Court will grant the motion as to Elizabeth Higley and Dr. Patricia Emmerman, and the Court will dismiss the claims against the Freehold Regional High School District Board of Education as moot.

**I.     BACKGROUND**

The following facts are considered undisputed for purposes of deciding this summary judgment motion. As part of the fall 2009 semester, Freehold Regional High School (the "High School"), which is within the Freehold Regional High School District Board of Education (the

"School District") offered high school students two courses called "Child Development Laboratory I" and "Child Development Laboratory II." (Def.'s Statement of Undisputed Material Facts ¶ 7; DE 18-2.) The purposes of the courses were to "examine[] the processes of parenting and the intellectual, social, emotional and physical development of children." (*Id.*) The courses also provided experience to students through a "child development laboratory." (*Id.* at ¶¶ 8-10.) Students were given the opportunity to observe children and prepare and present lessons in a "preschool setting." (*Id.* ¶ 10.) Classes were held on Wednesday, Thursday, and Friday with both morning and afternoon sessions. (*Id.* ¶ 19.) The morning session corresponded to three high school class sections that enrolled between 17 and 24 students each. (*Id.* ¶ 26.)

The "child development laboratory," (hereinafter the "Child Development Lab") was located in a classroom "converted to be suitable for preschool age children and included size-appropriate furniture and fixtures." (*Id.* at ¶ 11.) In order for the children to get to the classroom each day, child development teachers and their students met the children at a designated side door and escorted them to the classroom. (*Id.* ¶ 23.) Along the way, the children "passed two Food Science Rooms containing twelve kitchens," classrooms, and the faculty lounge; the classroom was across the corridor from the cafeteria. (*Id.* ¶¶ 24, 25.)

In order to be considered for participation in the Child Development Lab, a child had to be three or four years old and have a parent or guardian complete and submit a written application. (*Id.* ¶¶ 17, 19.) Plaintiff requested participation of her then three-year-old son N.E in April of 2009. (*Id.* ¶ 27.) The application asked various questions about the child including whether the child had any allergies. (*Id.* ¶ 28.) Plaintiff responded "none known." (*Id.*) N.E. was accepted into the Child Development Lab for the fall 2009 morning session. (*Id.* ¶ 29.)

During the summer of 2009, N.E. was diagnosed with a peanut allergy. (*Id.* ¶ 30.) N.E. was eating an apple while his brother was eating peanut butter. Shortly thereafter, N.E.'s face swelled and became red, he experience rhinorrhea (runny nose), and had some shortness of breath. (A.E. Affidavit, Ex. D at 1; DE 22 (the "Dr. Ho. Letter").) He was taken to the emergency room and given Benadryl and eye drops. (*Id.*) Dr. Linden David Ho, a physician with The Allergy & Asthma Group, evaluated N.E., diagnosed him with a moderate peanut allergy, and indicated that N.E. might have an anaphylactic reaction in the future. (*Id.*) Plaintiff was given an EpiPen and told that N.E. would need to strictly avoid any peanuts. (*Id.*)

Plaintiff contacted the High School and advised the school nurse and Ms. Elizabeth Higley, the Principal, that N.E. had been diagnosed with a peanut allergy. (Def.'s Statement of Material Facts ¶ 34.) Plaintiff told Ms. Higley that N.E. required a peanut-free environment and that staff would need to administer the EpiPen should N.E. experience an allergic reaction. (*Id.* ¶ 35.) Specifically, Plaintiff asked for several accommodations including "ensur[ing] that N.E. did not ingest or come into contact with peanuts or peanut products pursuant to the instructions of [Dr. Ho]." (*Id.* 36.)

Dr. Ho's instructions provided the following six steps "to ensure [N.E.'s] maximum safety:" (1) "No peanut butter or peanut products are allowed in classroom; (2) anyone entering classroom who will have contact with [N.E.] should wash their hands;" (3) "any snacks [N.E.] eats will be provided by his parents;" (4) "if other children consume peanuts strictly supervise that [N.E] does not eat them and that the children should wash their hands after consuming peanuts;" (5) "eating surfaces must be washed down with soap and water before eating and after;" and (6) "Epi Pen Jr. and Benadryl will be provided by parents; follow dosing as per

3

[N.E.'s] Food Allergy Action Plan, which Mom supplied to you." (Def.'s Statement of Undisputed Material Facts ¶ 37.)

Defendants later advised Plaintiff that due to concern that N.E.'s safety could not be ensured, he could not participate in the Child Development Lab. (*Id.* ¶ 40.) Subsequently, in January of 2010, the Child Development Lab was eliminated after the High School's curriculum was modified. (*Id.* ¶ 41.)

On April 2, 2011, Plaintiff filed a verified complaint in the Superior Court of New Jersey, Monmouth County, Law Division. (DE 1-1.) The complaint alleged disability discrimination and failure to accommodate N.E.'s peanut allergy in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Americans with Disabilities Act (ADA), 24 U.S.C. § 12132; and the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. § 10:5-4. (*Id.*)

The action was removed to this Court, and on November 17, 2011, Plaintiff amended the complaint to allege discrimination on the basis of a perceived disability in violation of the Rehabilitation Act, ADA, and NJLAD. (DE 15.) On December 23, 2011, Defendants filed this motion for summary judgment seeking dismissal of Plaintiff's amended complaint. (DE 18.) Plaintiff opposes the motion. (DE 21.)

## II.   STANDARD OF REVIEW

A court shall grant summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable

jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollack v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

### A.   Claims Against Individual Defendants

Plaintiff alleges that Elizabeth Higley and Patricia Emmerman violated the ADA, Rehabilitation Act, and NJLAD by refusing to accommodate N.E.'s peanut allergy. As individual defendants, Higley and Emmerman are entitled to summary judgment dismissing these claims.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Individual defendants cannot be held liable for violations of Title II of the ADA. *See Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 499 (D.N.J. 2001); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 557 (D.N.J. 2000). Therefore, Plaintiff's ADA claims against Higley and Emmerman fail as a matter of law.

The Rehabilitation Act prohibits qualified individuals with disabilities from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Suits may be brought pursuant to Section 504 [of the Rehabilitation Act] against recipients of federal financial assistance, but not against individuals." *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (quoting *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002)). Accordingly, Higley and Emmerman are entitled to summary judgment on Plaintiff's Rehabilitation Act claims.

The NJLAD provides that "[a]ll persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination based upon disability. N.J. Stat. Ann § 10:5-4. The NJLAD permits liability for those persons who "aid, abet, incite, compel or coerce the doing of any of the acts forbidden." *Id.* 10:5-12(e); *Cicchetti v. Morris County Sheriff's Office*, 194 N.J. 563, 594 (2008). In order to "impose concert liability on an individual," a court must find that the defendant "[knew] that the other's conduct constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (quoting the Restatement (Second) of Torts § 876(b) (1979)). This requires proof by the plaintiff that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Id.*

Plaintiff argues that Dr. Emmerman and Ms. Higley knew the School District was breaching a duty to accommodate N.E in violation of the NJLAD. (Pl.'s Br. at 22.) As evidence

6

of this knowledge, Plaintiff points to a letter written by Ms. Higley and sent to parents of children participating in the Child Development Lab. The letter informed parents that the Child Development Lab was being "immediately discontinue[d] due to the threat of litigation." (*Id.* at 22 (citing Orihuela-Reilly Decl., Ex. B).) As a result, Plaintiff infers that Ms. Higley and Dr. Emmerman, as Superintendant of the School District, knew of a violation of law. Even accepting Plaintiff's inference as true, this is insufficient to find Higley and Emmerman liable under a theory of aiding and abetting. General awareness of a violation is insufficient. *Tarr*, 181 N.J. at 84. Furthermore, Plaintiff points to no evidence and makes no argument that Ms. Higley and Dr. Emmerman substantially assisted and encouraged a principal violation, a required element to prove aiding and abetting. Therefore, Higley and Emmerman are entitled to summary judgment dismissing the NJLAD claims.

### B.   Claims Against the School Board

The Court cannot reach the merits of Plaintiff's claims against the School Board. A federal court's jurisdiction is limited to actual cases or controversies. U.S. Const. art. III, § 2. A case or controversy must not only exist at the time a case is filed, but must be present at all times during litigation. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (U.S. 1980). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (citation omitted). At the heart of the mootness inquiry is the "court's ability to grant effective relief." *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001). If developments in the case "eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-699 (3d Cir. 1996).

Plaintiff argues that her request for damages precludes a finding of mootness. (*Id.* at 9.) Even if a claim for declaratory or injunctive relief is moot, the "availability of damages or other monetary relief almost always avoids mootness." *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 41 (3d Cir. 1985). In this case, however, Plaintiff has no cognizable claim for damages. During oral argument, Plaintiff identified compensatory damages of $1,200. According to Plaintiff, that cost represents the tuition charged by a daycare center where N.E. enrolled in during a period of the fall of 2009. Yet a full time daycare is not a substitute for the free Child Development Lab that operated only several hours a day and only three days a week. In other words, this is not a case where a child was denied participation or accommodation in mandatory free public education forcing him to seek an alternative. Indeed, Plaintiff conceded during oral argument that the school district was never under a duty to admit or allow N.E to participate in the Child Development Lab. *See* N.J. Stat Ann. 18A:38-1. Therefore, as a matter of law, Plaintiff did not suffer any compensable money damages when unable to participate.

A plaintiff's request for declaratory judgment "depends on whether there is a live dispute between the parties." *Donovan*, 336 F.3d at 216. In this case, Plaintiff asks the Court to declare that the actions of the School District constitute a violation of the NJLAD, ADA, and Rehabilitation Act. (Amended Compl. at 8.) However, the High School eliminated the Child Development Lab from its curriculum in January of 2010, before this case was even filed. Moreover, Plaintiff agrees that the School District was under no obligation to keep the Child Development Program operational. As a result, a declaratory judgment that a non-existent program is in violation of law would have no affect on Plaintiff's alleged injuries and would result in an advisory opinion by the Court.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Elizabeth Higley and Patricia Emmerman are entitled to summary judgment dismissing Plaintiff's claims against them and that the School District is entitled to dismissal of Plaintiff's claims as moot. An appropriate order is filed herewith.

Dated: February 23, 2012

_____
United States District Judge